IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                            CASE NO.:  2:24-CR-20070-DDC

NEWTON JONES, et al.,

        Defendant.

### Non-Party International Brotherhood of Boilermakers Motion to Modify Subpoena or In the Alternative to Quash

The International Brotherhood of Boilermaker's (IBB) has been served with a subpoena duces tecum[1] which orders it to produce 14 years' worth of email, calendars, contacts and other account information for each defendant's email account at the IBB, along with the email accounts for a waiting-to-be sentenced defendant in a related case[2], and two former IBB employees.  Ordinarily such a subpoena would be met with a motion to quash under *United States v. Nixon* as it lacks the required specificity, relevance and admissibility that *Nixon* mandates. *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).  Here, notwithstanding that the request is neither proper under Rule 17(c) or (h), and fails to comport with *Nixon*, the IBB is willing to produce much of what it is requested.  So, it seeks a modification of the subpoena, assuming the parties do not object[3].  Should any party

---

[1] Exhibit A, Subpoena
[2] See *United States v. Brown*, D. Kan. 24-CR-20047
[3] Although the subpoena was issued by the government, counsel for the IBB understands that the defendants seek this same information.  And the proposed

1

object – as they are entitled to do – the IBB seeks in the alternative, an Order to Quash the Subpoena. The proposed modification limits the subpoena to: all requested accounts with the exception of post-plea defendant Kathy Stapp and excluding any emails involving counsel for the IBB or otherwise subject to attorney-client or work product privilege. And it requests an agreed-upon protection order, a key provision of which prohibits any party from using or disclosing this information outside of the instant matter. This motion begins with the background of the subpoena, addresses the limitations of Rule 17(c), proposes a modification of the Rule 17(c) subpoena, and requests an extension of the current deadline to comply.

**Background**

The allegations against the defendants arise out of their former employment as officers or staff at the IBB. The subpoena seeks the email account contents from 2009-2023 of all the defendants who have not yet resolved their case, the email of Kathy Stapp, who has already pled guilty, the email of Tyler Brown, a defendant in a related case, and two former employees. Dated June 1, the subpoena has a return date of June 18, 2025 at the status conference.

Also filed at or around the same time as the subpoena is the government's *Motion for Abrogation of Attorney-Client Privilege by Waiver* requesting this Court to define the waiver of the Boilermakers Union's attorney-client privilege to:

---

modification would not prohibit any party from seeking information, either through a voluntary production by the IBB or via a properly issued Rule 17(c) subpoena. The proposed course of action is intended to quickly place the information that the parties can agree upon in the hands of the parties, rather than to litigate a motion to quash which would further delay any production.

1) Any communication between Boilermakers Union officers or employees and any of its attorneys concerning the standards for expenditure of union funds under the Boilermakers Union Constitution, by-laws, and policies, and federal law; and
2) Any communications between Boilermakers Union officers or employees and any of its attorneys concerning the subject of any [of] the Indictment allegations, regardless of when the communications were made[4].

While the IBB has not yet sought to intervene, it intends to do so, and file a response in opposition.

The government's motion has some relevance to the instant subpoena: attorney client communications are contained within most, if not all, of the email accounts ordered by the subpoena.

### **What Rule 17c permits, and doesn't permit**

Fed.R.Crim.P.17(c) subpoenas direct the type of evidence to be produced, the timing of any production, and the necessary permissions to obtain the subpoena. Specifically, Rule 17 (c) provides:

> **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.
>
> **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by

---

[4] Dkt. 107, at 24.

court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

The rule permits books, papers, documents, data or other objects. What it doesn't permit is a statement of a witness or a prospective witness as Rule 26.2 governs statements. "No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Email – correspondence authored by one person and directed towards someone else – is a statement. Within each email account are communications – statements – of, presumably, potential witnesses.

The Rule also directs the timing of any production. A pretrial production of documents is a limited grant of authority and requires Court approval. Fed.R.Crim.P.17(c)(1). Court approval is no mere technicality. "It is a vital protection against misuse or improvident use of such subpoenas." *United States v. Noriega*, 764 F.Supp. 1480, 1493 (S.D.Fla.1991)(quotation marks omitted). Moreover, it "would lend itself to discovery of the broadest sort – a result that the drafters of the Rule decried." *United States v. Finn*, 919 F.Supp. 1305, 1329 (D.Minn.1995). This limited authority extends to both the government in a criminal case as well as the defendants. *United States v. Binh Tang Vo*, 78 F.Supp.3d 171, 178 (D.D.C. 2015). Here, not only was permission not obtained, a status conference, where no evidence is to be offered, is not the type of hearing contemplated under the Rule.

Beyond these issues, the subpoenaed items lack specificity, relevance and admissibility as required by *United States v. Nixon*. *Id*. at 699-700. *Nixon* mandates that a party seeking a subpoena under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."
> *Id*. at 699-700.

What *Nixon* and its progeny require is that three hurdles – relevance, admissibility and specificity – be cleared. *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). As to relevance, subpoena duces tecum is *not* a discovery tool. *United States v. Abdush-Shakur*, 465 F.3d 458, (10th Cir. 2006). As to admissibility, "impeachment evidence does not meet the admissibility test and may not be the sole support for a party's demand." *Id*. And it is the third hurdle – specificity – which is most difficult to clear. *United States v. Wittig*, 250 F.R.D. 548, 550, 552 (D.Kan.2008) "*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things." *Morris*, 287 F.3d at 991; *United States v. King*, 164 F.R.D. 542, 546 (D. Kan. 1996) ("The moving party must specify why the materials are wanted, what information is contained in the documents, and why those documents would be relevant and admissible at trial."). As the *Wittig* Court opined, "The specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." *Id*. at 552 (internal quotations

5

omitted. Two cases bookmark what is permitted. An entire file is evidence of an impermissible fishing expedition. *Id.*, see also *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994) (citing *United States v. Reed*, 726 F.2d 570, 577 (9th Cir.), cert. denied, 469 U.S. 871 (1984). On the other end, records about one vehicle on one particular day is sufficiently specific. *United States v. Romero*, 2023 WL 2614472 at *3 (D.N.M. March 23, 2023). The process this Court undertakes is illustrated in its recent decision in *United States v. Clinesmith*, 2025 WL 974262 (D. Kan. 2025). There, in light of the difficulty of meeting the specificity requirement, this Court began its *Nixon* analysis with specificity, considering each specific request which it opined read like "civil discovery." 2025 WL 974262 (D. Kan. 2025). Methodically, it considered, then rejected, all but three of the categories of information based on failure to meet the specificity requirement. *Id.* From there, this Court analyzed relevance and then admissibility, eliminating yet another category before concluding the subpoena valid as to only two of the multitude of items requested. *Id.*

Here, the subpoena is sought before any evidentiary issue is before the Court and more than 10 months before the trial. That alone, or coupled with the expanse of the demand, is evidence that the subpoena seeks "discovery," not evidence intended for use at a trial or other evidentiary hearing. Nor did the moving party seek authority to obtain pretrial production. To the extent it requests email - nothing more than statements of potential witnesses – it is governed by Rule 26.2 rather than Rule 17(c). Rule 17(h). Even if *some* email has *some* relevance, that

relevance has not been made known to the Court. By demanding every email of the account holder over the expanse of a 14-year period of time, it will undoubtedly contain a tranche of email not relevant to the allegations in the Indictment. *See Wittig*, 250 F.R.D. at 553 ("A request will usually be sufficiently specific where it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate.") And absent information regarding specificity and relevance, it is impossible for this Court to assess admissibility. This supports an order quashing the subpoena in its entirety. But that is not what the IBB requests, at least not as its primary relief.

### The proposed modification in lieu of quashing the subpoena

The IBB is willing to produce much of what the government requests and seeks a modification as its primary request for relief. We note that we point to the defects in obtaining the subpoena and in the subpoena itself because we believe that future subpoena requests will be forthcoming, if not from the government then from the remaining defendants. Simply because the IBB is willing to broadly produce now under a modified subpoena should not be deemed an agreement or even a blanket waiver as to the requirements of Rule 17(c) and (h), if indeed that is even possible. And, we point to the defects because as ordered, the subpoena would envelop communications between various individuals and IBB counsel and a request has been made to abrogate the attorney client privilege based on waiver. While that is the subject of a separate motion and intended response in opposition, the time period for such a response is July 6, 2025. Our position should not be

7

construed in any way as an agreement to turn over attorney communications, privileged or otherwise. Though the ideal way would have been for the parties to reach an agreement before a subpoena issued, now that a subpoena has been issued, we must seek the Court's intervention. Accordingly, we ask the Court to modify the subpoena in the manner described below. While we don't anticipate an objection, if any party objects, we ask the Court to quash the subpoena in its entirety for the reasons previously set forth.

The IBB asks the Court to modify the subpoena as follow: the email accounts of the defendants[5], Tyler Brown, and the two former IBB employees. Excluded, beyond the email account associated with codefendant Kathy Stapp, are any attorney communications, or privileged information. This exclusion regarding attorney communications, or privileged information, is subject to the Court's ruling on the *Motion for Abrogation of Attorney Client Privilege*.

**Timing**

The subpoena has a quick return date of 18 days, which has proven too short for the IBB to comply, given the number of search terms to exclude the numerous attorneys the IBB has used over the years[6]. The IBB suggests that if the

---

[5] Excepted is Defendant Kathy Stapp, former Director of Human Resources, among other positions. The government (or the defendants) may, of course, request specific information from her account, and the IBB is willing to provide that information voluntarily (subject to the above-discussed protection order). Of course, nothing precludes either party from seeking another subpoena that comports with Rule 17 and the requirements of *Nixon*.

[6] We have also received, on June 12, 2025, a list of personal attorneys used by the account holders in question. We take no position as to whether the account holders can maintain privilege in light of their existence in an IBB account but agree to

government or any party opposes this modification, they be required to file their opposition no later than June 30, 2025. If no opposition is received and assuming a filing of a protective order by that date, the IBB proposes to produce, in accordance with the modification, the items no later than July 1, 2025.

## Conclusion

For the reasons set forth herein, the IBB asks this Court to modify the subpoena, or in alternative, to quash. Until such time as there is either agreement as to the modification or the Court rules on the motion to quash, the IBB requests that it not be required to produce any item identified in the subpoena.

Respectfully submitted,
MORGAN PILATE LLC

*/s/ Melanie S. Morgan*
Melanie S. Morgan, #16088
926 Cherry Street
Kansas City, Missouri 64106
816-471-6694 (Tel)
816-472-3516 (Fax)
Email: mmorgan@morganpilate.com
*Counsel for International Brotherhood of Boilermakers*

---

withhold those communications to permit the parties to litigate that issue, should they choose.

**CERTIFICATE OF SERVICE**

I, Melanie Morgan, hereby certify that on the 16th day of June 2025 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing and a copy of the filing to all counsel of record.

*/s/Melanie S. Morgan*
Melanie S. Morgan
