UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>     Plaintiff,<br><br>  v.<br><br>NEWTON JONES,<br>WILLIAM CREEDEN,<br>KATERYNA (KATE) JONES,<br>WARREN FAIRLEY,<br>LAWRENCE McMANAMON, and<br>CULLEN JONES<br><br>     Defendants. | Case No. 2:24-cr-20070-DDC-TJJ |

**UNITED STATES' RESPONSE IN OPPOSITION TO NON-PARTY INTERNATIONAL BROTHERHOOD OF BOILERMAKERS MOTION TO MODIFY SUBPOENA OR IN THE ALTERNATIVE TO QUASH**

  The Government, by Duston J. Slinkard, Acting United States Attorney for the District of Kansas, respectfully submits this memorandum of law in opposition to Non-Party International Brotherhood of Boilermakers Motion to Modify Subpoena or In the Alternative to Quash (doc. 111).

### I. Background

  1. In April 2022, the Government served the International Brotherhood of Boilermakers ("Boilermakers Union") with a grand jury subpoena seeking documents regarding a series of alleged thefts by officers and employees of the Boilermakers Union ("the April 2022 Subpoena"). In response, counsel for the Boilermakers Union directed it to issue a preservation memo to its employees. The preservation memo issued in May 2022, required the Boilermakers Union and its employees to preserve electronic and paper formats of responsive records.

2. On August 14, 2023, after extended delays from Boilermakers Union's counsel and lack of response to the April 2022 Subpoena, the Government filed a Motion to Compel responsive documents. (In Re Grand Jury Subpoena, 2:23-mc-00211-DDC (Docket Number 1). On or about August 18, 2023, the Boilermakers Union dismissed its counsel and retained Attorney Melanie Morgan of Morgan Pilate to represent the Union in responding to the April 2022 grand jury subpoena.

3. On September 26, 2023, the Government issued a second grand jury subpoena to the Boilermakers Union ("the September 2023 Subpoena"). Following a request to extend the subpoena's deadline, the Boilermakers Union reaffirmed its intended compliance with the September 2023 Subpoena. See International Brotherhood of Boilermakers' Response to Government's Motion to Compel (September 18, 2023).

4. On August 21, 2024, the grand jury returned an Indictment (Docket Number 1). At the time of the return of the Indictment, the Boilermakers Union had still not produced all documents requested in the April 2022 and September 2023 Subpoenas.

5. Beginning in September 2024, the Government began producing the voluminous discovery to defendants over the course of several months. In follow-up discovery communications, defendants requested their own email communications in the Boilermakers Email System. The Government did not object, but indicated that material was still in the possession of the Boilermakers Union.

6. For several months, the Government and defendants have renewed their requests for the production of emails in the Boilermaker's Email System without success. Attorney Morgan confirmed that the Boilermakers Union had preserved and collected each defendant's email in the Boilermakers Email System and that its vendor had already processed

the material.  Attorney Morgan also assured the Government that the Boilermakers Union was willing to provide the emails as long as it was confident that it was protecting its attorney-client privilege.  Attorney Morgan requested that the Government file a subpoena for those emails under Rule 17(c) in order to formalize its request, as well as the respective requests of defendants for the same emails.  In requesting that subpoena, Attorney Morgan appeared to indicate that it was a mere formality to which the Boilermakers Union held no objection--aside from its existing assertions of attorney-client privilege.

7. On May 30, 2025, in order to facilitate the parties' access to the emails on the Boilermakers Email System, the Government:  1) served a formal subpoena for the emails to the Boilermakers Union ("the May 30 Subpoena"); and 2) filed a motion seeking to abrogate potential attorney-client privileges in those emails (Docket Number 107).

8. In response, Attorney Morgan has asserted that there may be communications on the Boilermakers Email System between defendants and their personal attorneys.  Attorney Morgan stated that, on her own initiative, she had collected the names of "many" such personal attorneys from defendants and that her intention was to perform a filter of the emails and withhold any communications involving those attorneys from the Government and the unaffected defendants.  On June 16, 2025, the Government supplemented its motion to abrogate to specifically address the issue of communications with personal attorneys on the Boilermakers Email System  (Docket Number 112).

9. On June 16, 2025, the Boilermakers filed a motion seeking to have the parties agree to a modification to the May 30 Subpoena or, if the parties do not agree to its modification, to file a motion to quash that subpoena.  The proposed modification would exclude any emails from the subpoena production which involve Defendant Kathy STAPP,

who served as both Director of Human Resources and Special Assistant to the International Secretary-Treasurer (Defendant William CREEDEN) during the relevant period of the Indictment. The Boilermakers Union fails (Motion p. 8, n.5) to give any justification why emails involving Defendant STAPP should not be produced.

10. On June 25, 2025, Attorney PJ O'Connor, counsel for Defendant STAPP, indicated to the Government that she would oppose the Boilermakers Union motion proposing to withhold her emails in the Boilermakers Email System, while producing those of all six (6) other defendants, on various constitutional and legal grounds.

## II. Applicable Law

### A. Rule 17(c) Subpoenas

Rule 17(c) of the Federal Rules of Criminal Procedure provides:

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> (2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Fed. R. Crim. P. 17

Federal Rule of Criminal Procedure 17(c) permits a Court to direct that documents designated in a subpoena be produced before trial. A party seeking the production of documents in advance of trial must establish "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend

4

unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"  United States v. Nixon, 418 U.S. 683, 699-700 (1974) (footnote omitted).

If a subpoena filed pursuant to Rule 17(c) is challenged, the movant must show that the subpoenaed documents are relevant, admissible, and specific.  United States v. Abdush-Shakur, 465 F.3d 458, 467 (10th Cir. 2006); United States v. Gonzalez–Acosta, 989 F.2d 384, 389 (10th Cir. 1993).  Rule 17(c)(2) allows a third party to move to quash a subpoena, which the Court may grant if compliance with the subpoena "would be 'unreasonable or oppressive,' but not otherwise."  Nixon, 418 U.S. at 698 (quoting Fed. R. Crim. P. 17(c)(2)).

### III. Argument

**A. The Boilermakers Union's Motion to Modify the May 30 Subpoena Continues its History of Obstructive Conduct With Respect to Production of Subpoenaed Documents**

The Boilermakers Union's productions in response to both the April 2022 and September 2023 Grand Jury Subpoenas were tardy, incomplete, and/or necessitating court intervention to gain any compliance.  Following the Indictment, the Government and defendants have repeatedly requested that the Boilermakers Union produce emails from the Boilermakers Email System.  During the 10 months from return of the Indictment in August 2024 to the present, the Boilermakers Union has never challenged that those emails are potentially relevant evidence or whether the request was unreasonable, unspecified, or overbroad.  Attorney Morgan, in fact, has assured the parties that the Boilermakers Union had compiled the requested emails and had already performed some filtering of those materials for various alleged attorney client privileges belonging to the Boilermakers Union.

Unable to resolve the issue of attorney-client privilege for more than nine months, on May 30, 2025, the Government filed a motion to abrogate the Boilermakers Union potential attorney-client privilege in the emails—the alleged sole sticking point for several months-- before the Court. In response, Attorney Morgan raised the heretofore unmentioned issue of defendants' communications with <u>personal</u> attorneys within the Boilermakers Email System. Without first attempting to resolve the issue with the Government, Attorney Morgan stated she had already undertaken to collect the names of personal attorneys from defendants and would undertake another filtering process of the emails of uncertain length of time.

Furthermore, in its present motion, the Boilermakers Union continues its record of serial withholding of clearly relevant evidence by attempting to wring an improper concession from the Government under the threat to file a wholly separate motion to quash the May 30 Subpoena. At set forth below (p. 11), the Boilermakers Union cannot single out Defendant STAPP and remove her emails from the May 30 Subpoena, particularly where it offers no justification for her removal.

In short, the Court should not countenance the Boilermakers Union's current motion to modify the May 30 Subpoena, with its attendant threat to file another separate motion to quash if its improper offer is not met. The Boilermakers Union has generated significant delays in the prosecution of this case through unexplained delay, surprise issues and changes of heart, and duplication of procedures. All relevant issues of attorney-client privilege are now properly before the Court and the propriety of the May 30 Subpoena may be resolved without an additional motion to quash.

**B. The May 30 Subpoena Complies with All Requirements Under Rule 17(c) and Merits the Immediate Enforcement of the Court**

The May 30 Subpoena requests the emails of Tyler Brown, a defendant in a parallel RICO case, all of the defendants in the case, and one additional employee of the Boilermakers Union, all housed on the Boilermakers Email System. The Boilermakers Union does not argue that the emails are not relevant and should not be produced so that defendants can prepare their cases and the Government can complete its discovery obligations.

However, the Boilermakers Union first challenges the process for which the Government obtained its subpoena, arguing that the Government did not make a specific request to the Court to obtain the records. First, aside from any privilege issues, both the Government and defendants have requested those emails for several months. At no point in time did the Boilermakers Union raise an overbreadth concern with the subpoena until after it was served. Presumably, even if it had made a formal request under Rule 17(c) to the Court prior to issuing the subpoena, the Government would have informed the Court that the Boilermakers Union had agreed to the scope of the request. It is hard to image the Court intervening to limit the scope of a subpoena that was uncontested.

Second, the Boilermakers Union requested a Rule 17(c) subpoena--essentially to document the formal subpoena request--not to narrow the scope of the request. It cannot now complain about a subpoena that it requested. It is also disingenuous that the Boilermakers Union objects that the response date on the subpoena is not a date where a hearing is set. Attorney Morgan understood, and even asserted as the union's position, that the issues regarding attorney-client privilege were complex ones--potentially requiring lengthy filter processes and everyone agreed that these issues should be taken up well in advance of trial so as not to delay the May 2026 trial date.

In any event, the May 30 Subpoena clearly meets all four of the requirements set forth in United States v. Nixon, 418 U.S. at 699-700.  With respect to the relevance requirement, the emails sought are both relevant and admissible and the Boilermakers Union does not assert otherwise.  In any event, there seems to be little doubt that emails among and between defendants as Boilermakers employees would bear upon allegations that they operated the union as a racketeering enterprise for many years.  See United States v. Libby, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401) (noting relevancy prong "requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'").

Second, the emails are housed on the Boilermakers Email System and uniquely in the custody of the Boilermakers Union.  Accordingly, the Government cannot obtain them from any other source through the exercise of due diligence.  Third, all parties concede that the subpoenaed emails are sufficiently voluminous and that they are needed in advance of trial.

Finally, the Government is making this request in good faith after numerous attempts to obtain voluntary production without a subpoena.  And while the Boilermakers Union makes the perfunctory charge of "fishing expedition," the analogy is horribly inapt.  A fishing expedition occurs when a grand jury arbitrarily subpoenas documents without anything more than speculation that a crime has occurred (In re Grand Jury Proc., 616 F.3d 1186, 1203 (10th Cir. 2010)) or perhaps where a defendant seeks to obtain an agency's "entire investigatory file" (United States v. Morris, 287 F.3d 985, 991 (10th Cir. 2002)).  Here, a grand jury has determined that probable cause exists that dozens of offenses, including a racketeering conspiracy, has occurred at the Boilermakers Union for several years.  Subpoenaing emails

between and among the charged defendants during the relevant time period is not fishing for undiscovered leads on potential offenses.

The Government has also demonstrated the subpoenaed emails to be admissible, as well as relevant. Nixon requires that a Rule 17(c) subpoena seek materials that are admissible at trial, but the materials need not actually be used in evidence; rather, they need only be subpoenaed in a good faith effort to obtain evidence. See In re Martin Marietta Corp., 856 F.2d 619, 622 (4th Cir. 1988). Evidence that is relevant is presumptively admissible unless it is otherwise privileged. United States v. Rajaratnam, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) (citing Fed. R. Evid. 402 and noting that "the Nixon court referred to 'potential evidentiary uses' in applying the 'admissibility' requirement"). Accordingly, "[w]hile the request may not be for materials that might lead to [other] admissible evidence, as under the discovery rules, the request can be for materials that will themselves ripen into admissible evidence." United States v. Carollo, No. 10- cr-654, 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012).

With respect to specificity, the Nixon standard requires the movant's request need not be utterly specific, as the Nixon case itself demonstrates. Even in assessing a subpoena seeking the production of taped conversations from the President of the United States, the Supreme Court did not require complete specificity as to the particulars of the conversations, but only that "the identity of the participants and the time and place of the conversations, taken in their total context, permit a rational inference that at least part of the conversations relate to the offenses charged in indictment." Nixon, 418 U.S. at 700. As Judge Holwell explained in Rajaratnam, "in the context of a subpoena to a third party to whom Rule 16 does

not apply, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity." 753 F. Supp. 2d at 320 n.1.

The fact that a request calls for "all emails" is not sufficient, on its own, to render a Rule 17(c) request improper. See, for example, United States v. Vought, No. 3:05cr268 (JBA), 2006 U.S. Dist. LEXIS 39664, at *52 (D. Conn. June 15, 2006) (approving a request for documents concerning "employees and or representatives of the New Haven Savings Bank . . . and/or its successor, Newalliance Bancshares, Inc."); Rajaratnam, 753 F. Supp. 2d at 322 (denying motion to quash and rejecting argument "that application of the request to documents reflecting communications between [a third party] and 'any agent or employee of Galleon . . . takes [the request] out of the realm of what is relevant and into the ambit of an improper fishing expedition for discovery purposes'").

Finally, the Boilermakers Union makes no assertion that the compliance with the subpoena is unreasonable or oppressive. It simply states that the 18-day turn around is too quick "given the number of search terms to exclude the numerous attorneys the IBB has used over the years." This response might hold some merit if this was the first time the Government had made this request. This request for emails was made during initial discovery in February 2025, giving the Boilermakers Union ample time to run search terms. As noted above, Attorney Morgan has indicated that the emails have been collected, processed by vendors, searched for potentially privileged communications, and segregated for litigation over the issue of privilege.

**C. The Boilermakers Union's Offer to Strike a Bargain with the Government By Excluding Defendant STAPP from the May 30 Subpoena is Plainly Improper and Likely Violates Her Constitutional Rights, as Well As the Rights of the Other Defendants**

The Boilermakers Union offers to produce the subpoenaed emails if those bearing the name of Defendant Kathy STAPP are excluded, but fails to offer any justification for that exclusion. Even though Defendant STAPP has pleaded guilty in this case, she is nonetheless entitled to all protections afforded criminal defendants under the Constitution and federal law. For example, Defendant STAPP may testify in this case and has a right to establish and preserve her credibility as a witness using her own communications, and certainly, is entitled to rely on those communications during her sentencing.

Similarly, the remaining defendants have a right to rely on email communications involving Defendant STAPP in formulating their respective defenses, as well as, for example, in taking full measure of their rights under the Confrontation Clause should Defendant STAPP testify at trial. As noted (p. 4), Defendant STAPP occupied the top of the human resources and financial functions of the Boilermakers Union for the entire period of the racketeering conspiracy. Withholding any and all emails within the Boilermakers Email System bearing Defendant STAPP's name, while producing all other subpoenaed emails, would create an enormous distortion within the record of this criminal prosecution.

Accordingly, the mere invitation of the Boilermakers Union to the Government to potentially violate a particular defendant's rights in order to release some of the subpoenaed emails from purgatory is itself improper. Those types of tradeoffs in discovery may be common, and even welcome, in civil litigation among parties in dispute. However, singling out a particular defendant for compromise of her rights--thereby essentially creating two classes of defendants--has no place in a criminal prosecution.

**Conclusion**

WHEREFORE, the Government respectfully requests that the Court deny Non-Party International Brotherhood of Boilermakers Motion to Modify Subpoena or In the Alternative to Quash.

Respectfully submitted,

DUSTON J. SLINKARD
ACTING UNITED STATES ATTORNEY

By:  */s/Faiza H. Alhambra*
FAIZA H. ALHAMBRA
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6904
913-551-6541 (fax)
Faiza.Alhambra@usdoj.gov
Kan. S. Ct. No. 24525

By:  */s/ Jabari B. Wamble*
JABARI WAMBLE
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6730
913-551-6541 (fax)
Jabari.wamble@usddoj.gov
Kan. S. Ct. No. 22730

By: */s/ Vincent Falvo*
VINCENT FALVO
Trial Attorney
Violent Crime and Racketeering Section
United States Department of Justice
1301 New York Avenue, NW, Room 753
Washington, D.C. 20530
(202) 353-9384
vincent.falvo@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on June 26, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

/s/ Faiza H. Alhambra
Faiza H. Alhambra
Assistant United States Attorney