## UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-cr-20070-DDC-TJJ |
| Plaintiff, | |
| v. | |
| NEWTON JONES, WILLIAM CREEDEN, KATERYNA (Kate) JONES, WARREN FAIRLEY, LAWRENCE McMANAMON, KATHY STAPP, and CULLEN JONES, | |
| Defendants. | |

### JOINT MOTION TO DISMISS PURSUANT TO THE SPEEDY TRIAL ACT, OR IN THE ALTERNATIVE TO STAY PROCEEDINGS, AND SUGGESTIONS IN SUPPORT

COME NOW Defendants[1], through undersigned counsel, and jointly move the Court under 18 U.S.C. § 3162 for an order dismissing the criminal charges against them with prejudice. Alternatively, Defendants ask the Court to stay all pretrial deadlines until the Government complies with all of its discovery obligations.

### BACKGROUND

Following a years-long investigation into the International Brotherhood of Boilermakers Union (the "IBB") and its executives, the Government charged Defendants on August 21, 2024, in a 57-count indictment with racketeering conspiracy in violation of 18 U.S.C. § 1962 (d), embezzlement from a labor organization through international travel expenses and vacation payouts in violation of 29 U.S.C. § 501(c) and a related forfeiture count. (Doc. 1).

---

[1] Defendants Newton Jones, William Creeden, Kate Jones, Warren Fairley, Lawrence McManamon, and Cullen Jones bring this motion. Defendant Kathy Stapp does not. The term "Defendants" throughout refers only to the moving parties.

No discovery was immediately made available to Defendants due to its purported volume and time required to provide electronic discovery to Defendants. Due to the complex legal and factual nature of the charges, on October 10, 2024, the Court held a status conference to ensure that discovery and ultimate disposition of this case could proceed in a timely manner. (Doc. 74, *Transcript of Status Conference*).

At that status conference, the Court expressed concern about the Speedy Trial Act timelines and pending discovery the Government had yet to produce. (Doc. 74 at 11:8-11) "And [a] 'few' [weeks] is a perfectly workable concept in everyday life, but the Speedy Trial Act is not so wild about it. How -- how long do you project a few weeks to be so that we can talk about where we head next after today's conference?"); *see also* ("I want to make sure that both the public and the defendant[s] receive the rights that the Speedy Trial Act grants them." (Doc. 74 at 14:2-4) (cleaned up).

At the conference, Counsel for the Government indicated its plan that the third and final round of discovery would be produced "in the next two weeks," (Doc. 74 at 11:12-13), which counsel for defendants understood would be produced by "the week of [November] 18th" at the latest. (Doc. 74 at 11:25.  In reliance on the Government's representation, counsel for Defendants were authorized to consent to a Speedy Trial waiver, and the Court found it in the ends of justice to exclude the time under the Speedy Trial Act. Counsel for Defendants proactively communicated with the Government about the means of production to ensure the discovery was produced in a format that would allow for the use of e-discovery tools to manage what they understood to be a very large and wide-ranging volume of documents and data. Counsel also inquired about the nature of the discovery they could anticipate, and about whether the Government had collected devices

the individual Defendants used as employees of IBB, as they believed such devices would have relevant and/or exculpatory evidence.

Discovery delays began immediately after the status conference. While some delay was due to the parties' efforts to meet and confer and reach agreement on the production format, delays have far exceeded what was contemplated by Defendants when they waived their speedy trial rights in reliance on the Government's assurances. The Government initially updated Defendants on November 22, 2024, that the Government was still processing load files for Productions 1, 2 and 3 and that, unfortunately, the Government did not have an estimate when that would be completed.

The first round of discovery was produced December 4, 2024, the second round was produced on December 12, 2024, and the third round was produced on December 16, 2024. Defense counsel was not able to begin reviewing the voluminous discovery in earnest until late December 2024. Shortly after Defendants' review began, multiple deficiencies in the discovery became apparent. On January 15, 2025, counsel notified the Government of the deficiencies in the discovery and subsequently met and conferred with the Government regarding the issues. In this meet and confer, Defendants again raised the need to obtain devices individual defendants used while employed at IBB and asked for a list of such devices that IBB had in its possession pursuant to its agreement with the Government to preserve the items.

On January 29, 2025, the Government provided Defendants' counsel a list of devices preserved by the IBB. The Government additionally produced a fourth round of discovery on February 4, 2025. Defendants' Counsel continued its review of discovery materials in early 2025 and determined that, much to their surprise, there was a very limited number of Defendants' email communications included in the discovery materials, and that the Government had failed to obtain

evidence from any of the Defendants' work devices. Defendants promptly made efforts to obtain images of Defendants' work devices and/or materials from the IBB servers including Defendants' work email accounts.  Counsel anticipated that these sources would include significant exculpatory evidence.

Following another meet and confer with the Government on Defendants' work devices or materials from the IBB servers, the Government took the position that it would coordinate obtaining images of the devices and/or server materials if Defendants identified specific devices and materials that were reasonably relevant to the case. Defendants' Counsel updated the Court regarding the status of discovery and plan to obtain devices on February 4, 2025.

On February 11, 2025, Counsel for Defendant Newt Jones emailed the Government suggesting that identifying materials which could be pulled from the server which may expedite discovery, namely Defendants' email communications. On February 14, 2025, Counsel for Cullen Jones emailed the Government identifying devices to be imaged which were believed to have relevant and exculpatory evidence. Counsel for Newt Jones again contacted the Government on February 28, 2025, regarding the device and server discovery. Counsel for Cullen Jones again contacted the Government on March 3, 2025, requesting an additional device to be imaged and seeking confirmation that the previous devices which were identified were in the process of being imaged. Having received no response, Counsel for Cullen Jones contacted the Government on April 4, 2025, to inquire about the status of the device imaging and confirm receipt of the previous requests.  On April 25, 2025, the Government finally responded to the February, March and April emails stating the Government was working on the request and, though the devices at issue were not in the Government's possession, they were working to facilitate this request and would be in touch soon with an update.

On May 6, 2025, the Government sent an email to Defendants' counsel providing an update on several items of discovery. Regarding Defendants' work devices the Government advised that because the devices were in the possession of IBB, the Government would be asking IBB for consent to search the devices identified by defense counsel. The Government further said if they obtained consent they then planned to request that the Heart of America Regional Computer Forensics Lab for imaging of those devices to provide to the requesting defense attorney. They further advised they were collecting additional information from IBB about Defendants' emails and other server material. In other words, some *three months* after Defendants requested specific device images, emails and server material, the Government for the first time revealed they had taken no steps whatsoever to facilitate the production of potentially exculpatory evidence, indicating that no imaging efforts had yet begun.

Upon learning the Government had not taken any steps to facilitate production of these materials, Defendants' counsel immediately contacted counsel for the IBB to determine if IBB would voluntarily produce any such materials as a work-around to the Government's inability or unwillingness to comply with its discovery obligations. After conferring, IBB counsel advised that a subpoena pursuant to Rule 17(c) would be necessary for IBB to produce the requested materials. Simultaneously, the Government moved to abrogate the privilege of certain IBB materials. Seven months after indicating discovery would be substantially complete in a "few weeks," the Government now seeks to compel the IBB itself to produce documents that should have been readily available since the case was indicted. (See Doc. 107, Government's Motion for Abrogation of Attorney-Client Privilege, filed May 30, 2025). Notably, these materials were readily available for production to the government, but for unknown reasons the Government consciously chose not to collect such materials—either during the investigation with grand jury subpoenas or after

indictment—leaving Defendants in the legally cumbersome position of having to seek arguably the most relevant discovery material, i.e. device images, e-mail communications and server materials, through a subpoena pursuant to Rule 17(c). This process has been needlessly delayed by the Government's consistent miscommunication as the Government indicated it was facilitating the production of this material only for Defendants to learn in recent weeks that no meaningful steps had been taken to do so since the material was requested *in February 2025*. This leaves Defendants, nearly a year post-indictment, unable to prepare appropriate pretrial motions and prepare a defense for trial. Even if the ongoing delays were unintentional, this is not what Defendants agreed to or understood when waiving their right to speedy trial in reliance on the Government's representations to this Court.

## ARGUMENT

### A. The Speedy Trial Act and this case's complexity designation.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a *speedy* and public trial" (emphasis added). Congress enacted the Speedy Trial Act of 1974 ("the Act") to protect that Sixth Amendment right, "generally requir[ing] a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance." *Zedner v. U.S.*, 547 U.S. 489, 492 (2006) (citing 18 U.S.C. § 3161(c)(1)). This not only protects a defendant's constitutional right to a speedy trial but also "the public interest in ensuring prompt criminal prosecutions." *U.S. v. Williams*, 511 F.3d 1044, 1047 (10th Cir. 2007) (citing *Zedner*, 547 U.S. at 501).

The Act also enumerates certain categories of delays that must "be excluded … in computing the time within which" trial "must commence" under subsection (c)(1). § 3161(h)(1)-(8). Under subdivision (h)(7)(A), a court may find that any continuance, whether granted on the

court's own motion or on motion from one of the parties, is excluded from speedy trial calculations

if the court finds "that the ends of justice served by [granting the continuance] outweigh the best

interest of the public and the defendant in a speedy trial."  The statute goes on to explain the factors

the court considers "in determining whether to grant a continuance under" subsection (h)(7)(A), §

3161(h)(7)(B), which include whether the "case is so unusual or so complex … that it is

unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within

the time limits" of the Act.  § 3161(h)(7)(B)(ii).

Here, pursuant to agreement between the Government and all Defendants, the Court

designated this case as complex under § 3161(h)(7)(B)(ii).  (Doc. 75 at 4).  The Court made specific

findings both as to (1) why the "ends of justice" outweighed the public interest and defendants'

speedy trial rights by continuing the case beyond the 70-day speedy trial period, and (2) why the

case was sufficiently complex to warrant the designation under § 3161(h)(7)(B)(ii).  (Doc. 75 at

2-4).  Based on those findings, the Court concluded that the time between October 10, 2024, and

January 16, 2025, status conferences was excluded from the speedy trial calculation as §

3161(h)(7)(A) permits.  (Doc. 75 at 2).

On January 16, 2025, the Court held another status conference and set the case for trial

beginning May 4, 2026.  (Doc. 92 at 1).  It deemed all time in between those dates as "excludable

time as provided for in [§ 3161(h)(7)(A)], in that the ends of justice served by the granting of an

extension outweigh the best interest of the public and defendants in a speedy trial."  (Doc. 92 at

1).

**B.  The Court should find that the substantial delay in this case since the beginning of 2025 is not excludable under the Act.**

Well over 70 days have passed since Defendants attempted to secure the necessary

evidence to defend themselves from the Government.  In October 2024, Defendants stipulated to

designating the case as complex under the Act based on an understanding with the Government

and the Court as to how discovery would proceed and, importantly, when it would be complete.

But that understanding has proved illusory.  Nearly nine months after the Government indicated

its final round of discovery would be produced in "two weeks," significant obstacles still stand

between the Government and the IBB over what will be disclosed, let alone when the Defendants

will finally have those materials[2] . Again, nearly a year after indictment, Defendants do not have

material as elementary as their clients' emails and, worse, have learned that the Government didn't

seek or obtain them in the first place, leaving the Defendants to their own devices to get

indisputably relevant materials.  These unreasonable delays substantially undermine the Court's

ends-of-justice findings under the Act such that they are no longer appropriate to excuse delay in

this case.

A designation as "complex" under § 3161(h)(7)(B)(ii) "cannot support a" delay "under the

[Act] when the cause of most of the delay is the Government's refusal to produce most of the

---

[2] Importantly, not only has the Government significantly delayed collecting and producing relevant material, but the documents the Government has produced suffer various processing and/or production flaws that have hindered Defendants' ability to timely review the documents. For example, Defendants recently uncovered documents that appear to be redacted or otherwise manipulated to only show a fully blacked out PDF, but that actually contain highly material, relevant text embedded somewhere within the document. This text is only viewable after a multi-step process that includes downloading the native PDF, selecting all "text" in the document (that is not even viewable), and then pasting that text into a separate Word document. Review software is not able to identify these documents, so manual review is necessary.  Of the examples Defendants have uncovered to-date, many contain highly relevant information concerning various specific allegations raised in the Indictment. Because Defendants only recently discovered this issue, the volume of these documents with hidden text remains unclear, as does whether the Government has access to these materials in a way the Defendants do not (which could implicate Brady concerns). Defendants discovered this issue very recently and are raising it with the Court now for efficiency's sake, so the Court will have all relevant issues before it at the next hearing. Defendants will endeavor to discover the full scope of this problem and be prepared to meet-and-confer as necessary with the Government as soon as possible.

80479870v4

documents." *U.S. v. Pikus*, 39 F.4th 39, 53 (2d Cir. 2022).  This makes sense, as the Act requires courts to make express ends-of-justice findings on the record, § 3161(h)(7)(A), without which "there can be no exclusion" of time under subdivision (h)(7).  *Zedner*, 547 U.S. at 507.  Where a court "fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted[.]"  *Id.* at 508.

This does not mean courts must "'repeat all of the details of its findings on the record each time it grants an ends-of-justice continuance'" in order "to maintain a complexity designation[.]" *Pikus*, 39 F.4th at 54 (quoting *U.S. v. Bikundi*, 926 F.3d 761, 778 (D.C. Cir. 2019)).  However, the court's initial findings supporting the designation must be "thoroughly set forth" and the circumstances underlying those findings should remain "*essentially unchanged*" to continue supporting complexity exclusions under the Act.  *Id.* (emphasis added).  Moreover, to prevent indefinite delay circumventing the Act's purpose, "the length of an exclusion for complexity must be not only limited in time, but also reasonably related to the actual needs of the case."  *Id.* (internal quotation marks and citation omitted).

The discovery delay is not reasonably related to any of the ends-of-justice findings in the Court's November 2024 order designating this case as complex.  At the October 2024 status conference, the Government represented that its final round of discovery would be produced "in the next two weeks" and by the week of November 18, 2024, at the latest.  (Doc. 74 at 11:12-13, 11:25).  Defendants relied on these representations in uniformly consenting to the complexity designation and thereby waiving their speedy trial rights.  Likewise, the Court relied on those representations to assuage its concerns about both "the public and the defendant[s'] rights" under the Act.  (Doc. 74 at 14:2-4).

At the very least, the delay from Defendants' first request to the Government for specific, additional IBB material, February 14, 2025, to May 6, 2025, the date the Government advised it had not yet taken any action to secure, image or produce those materials, should be included in the speedy trial calculation. From the February 14 request in which Defendants noted all IBB devices they sought to examine further, Defendants expected the Government was taking reasonable efforts to obtain that evidence from the IBB. But as the Government's April 25 e-mail makes clear, no such efforts were undertaken at all.  And it was not until May 6 that the Government stated it would be seeking consent from IBB for the material, but had not yet obtained any of the requested information or began the tedious and time consuming process of imaging devices or gathering electronic data from servers.

The evidence at issue is crucial to Defendants' defenses. It consists of emails Defendants sent and received during their employment at IBB, as well as digital images of hard drives and devices on which Defendants' work product was stored. These are highly relevant to counter allegations that several Defendants had "low-show" or "no-show" jobs at the IBB, as well as other allegations.  When, after reviewing discovery received in late December, it became clear to defense counsel that the Government never sought or collected any of this evidence from the IBB during either the extensive pre-trial investigation or following indictment, counsel began communicating with the Government to facilitate requests for the evidence as outlined above. From the time of their requests in February, Defendants believed that the Government was undertaking reasonable efforts to obtain such requested material from IBB. At no point did the Government suggest it was not in a position to gather and produce the material and that the Defendants should consider the potentially lengthy process of seeking a subpoena for relevant evidence from the IBB pursuant to Rule 17(c).

The ends of justice have not been served by the discovery delays in this case. If anything, they have prompted further unwarranted delays, as the Government did not subpoena IBB until on or after June 1, 2025, leading to the IBB's June 16 motion to modify its terms or to quash it. (Doc. 111). These last-minute proceedings over the scope of the Government's subpoena to IBB could have been avoided altogether with more prompt action on the Government's behalf (if not during the pre-indictment investigation to begin with).

The Court should include time caused by unwarranted Government delay in the § 3161(c) speedy trial calculation. Including just the time from Defendants' February 14 request to the Government's May 6 confirmation that it would begin taking appropriate action (not to mention time from the August 2024 indictment to the Court's October 2024 ends-of-justice findings), the 70-day limit is reached. As a result, and as explained further below, the Court should dismiss the charges against Defendants.

### C. The Court should dismiss with prejudice the Government's charges against Defendants to remedy the violation of speedy trial rights.

The Act specifically provides a remedy for violations of its time provisions: "If a defendant is not brought to trial within" the 70-day period required under section 3161(c) ("as extended by section 3161(h)"), the "indictment *shall* be dismissed on motion of the defendant." § 3162(a)(2) (emphasis added).

Courts have consistently recognized that Congress' use of "shall" in section 3162(a)(2) mandates dismissal of an action if the 70-day period has elapsed after factoring in any section 3161(h) delays. "A straightforward reading of these provisions leads to the conclusion that if a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed." *Zedner*, 547 U.S. at 508. *See also*

*U.S. v. Cardenas-Rodriguez*, No. 18-10104-EFM-1, 2019 WL 1492800, at *3 (D. Kan. Apr. 4, 2019) (recognizing that "dismissal is mandatory" if the § 3161(c) 70 days has elapsed and dismissing charges accordingly after 128-day delay).

In *Zedner*, the Supreme Court found that a trial court erroneously granted a 91-day continuance without making any findings as to why the time was excludable in the speedy trial calculation under section 3161(h). *Id.* at 495. After the defendant's jury trial, the Supreme Court reversed his judgment of conviction on all counts because the 91-day continuance was unexplained and unjustified by any findings under the Act, so it could not be excluded from the 70-day deadline and § 3162(a)(2) mandated dismissal. *Id.* at 509 (reversing for a determination of whether the dismissal should be with or without prejudice).

That leaves the question of whether the dismissal in these circumstances should be with or without prejudice. "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." § 3162(a)(2).

While the charged offenses are serious[3], the factors taken in total weigh in favor of dismissal with prejudice. On the second factor, when considering "whether the facts and circumstances warrant dismissal with prejudice," courts "focus on the culpability of the conduct that led to the delay." *Koerber*, 813 F.3d at 1277 (internal quotation marks and citations omitted). Where "the delay in bringing the case to trial is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Id.* (internal quotation marks and citation omitted). The final factor examines "the impact

---

[3] "If the court determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice." *U.S. v. Koerber*, 813 F.3d 1262, 1274 (10th Cir. 2016).

of a resprosecution on the administration of this chapter and on the administration of justice." §
3162(a)(2).  Courts consider "whether the delay caused by the government was intentional and the
prejudice suffered by the defendant from the Act's violation," as well as "the length of delay[.]"
*U.S. v. Toombs*, 713 F.3d 1273, 1281 (10th Cir. 2013).   While Defendants do not suggest any
intentional delay, multiple emails went unanswered and the government failed to take any action
to address the IBB discovery for months after Defendants' request. Further, Defendants have been
prejudiced by the delay. After reviewing the discovery produced in late December and realizing
significant additional discovery was needed to prepare a defense, Defendants took prompt action
to work with the government to obtain the discovery. However, five months since Defendants
began identifying the specific discovery needed in February, they are still without the material and
unable to begin preparing a defense in earnest. Further, the wide-ranging indictment includes
allegations of misconduct stemming back fifteen years, heightening the risk that the additional
delay results in prejudice from unavailable witnesses, failing and generally Defendants being
unable to defend themselves due to evidence lost over time. Given all the circumstances, dismissal
with prejudice is an appropriate remedy.

**D. Alternatively, the Court should stay all pretrial deadlines until the Government has finished obtaining and disclosing the necessary discovery in this case.**

Alternatively, the Court should stay the pretrial deadlines in this case until discovery issues
are resolved.  "[T]he power to stay proceedings is incidental to the power inherent in every court
to control the disposition of the causes on its docket with economy of time and effort for itself, for
counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).
Temporarily suspending the pretrial deadlines currently set in this case is necessary to protect
Defendants' right to file any dispositive motions they see fit – *after* all necessary discovery has
been made available to them.  On February 14, 2025, the Court entered an Order granting the

Parties' Joint Motion to Adopt Dates for Scheduling Order.  (Doc. 101).  Notably, that order required Defendants to file any dispositive motions by August 1, set a briefing schedule for those motions ending September 5, and required the parties to disclose experts no later than October 27, 2025. This schedule is untenable given the delays described in this motion. If this alternative relief is granted, Defendants request a stay of pre-trial deadlines pending a status conference with the court in approximately 45 days to confirm the status of discovery and set new deadlines allowing Defendants sufficient time to evaluate any discovery obtained.

WHEREFORE, Defendants jointly move this Court to issue its order dismissing all charges against Defendants with prejudice, or alternatively, suspending all pretrial deadlines unless and until the Government can produce all discovery, which it has not yet produced.

Dated: July 11, 2025                    Respectfully submitted,

                                        LATHROP GPM LLP

                                        /s/ Kathleen Fisher Enyeart
                                        Jackson R. Hobbs (#28191)
                                        jackson.hobbs@lathropgpm.com
                                        Kathleen Fisher Enyeart (#25203)
                                        kathleen.fisherenyeart@lathropgpm.com
                                        Brody Sabor (#29643)
                                        brody.sabor@lathropgpm.com
                                        LATHROP GPM LLP
                                        2345 Grand Blvd., Suite 2200
                                        Kansas City, Missouri 64108
                                        Telephone: 816.292.2000
                                        Facsimile:    816.292.2001
                                        Attorneys for Cullen Jones


                                        /s/ Patrick A. McInerney
                                        Patrick A. McInerney # 22561
                                        Daniel M. Nelson KS Fed # 79203
                                        SPENCER FANE LLP
                                        1000 Walnut Street, Suite 1400
                                        Kansas City, Missouri 64106-2140
                                        Tele: 816-474-8100
                                        Fax: 816-474-3216
                                        pmcinerney@spencerfane.com
                                        dnelson@spencerfane.com
                                        Attorneys for Newton Jones


                                        /s/ Kurt Kerns
                                        Kurt P. Kerns # 15028
                                        KERNS LAW GROUP
                                        328 N. Main Street Wichita, KS 67202
                                        Tele: 316-265-5511
                                        kurtpkerns@aol.com

                                        Federico Andino Reynal, *pro hac vice*
                                        THE REYNAL LAW FIRM, PC
                                        917 Franklin Street, Sixth Floor
                                        Houston, TX 77002
                                        Tele: 713-228-5900
                                        areynal@frlaw.us
                                        Attorneys for William Creeden

/s/ *Mark Molner*
Mark D. Molner # 24493
EVANS & MULLINIX, P.A.
7225 Renner Road, Suite 200
Shawnee, KS 66217
Tele: 913-962-8700
Fax: 913-962-8701
mmolner@emlawkc.com

John T. Davis, *pro hac vice*
KESSLERWILLIAMS LLC
1401 S. Brentwood Blvd., Suite 950
St. Louis, MO 63144
Tele: 314-455-5555
Fax: 314-727-2869
john.davis@kesslerwilliams.com
Attorneys for Kateryna Jones

/s/ *J.R. Hobbs*
James R. Hobbs KS Fed # 70169
Marilyn Keller # 15444
WYRSCH HOBBS & MIRAKIAN, P.C.
One Kansas City Place
1200 Main St., Suite 2110
Kansas City, Missouri 64105
Tele: 816-221-0080
Fax: 816-221-3280
jrhobbs@whmlaw.net
mbkeller@whmlaw.net
Attorneys for Warren Fairley

/s/ *Branden Smith*
Branden Smith # 22761
SMITH LEGAL, L.L.C.
719 Massachusetts Street, Suite 126
P.O. Box 1034
Lawrence, Kansas 66044
Tele:  785-856-0780
Fax:  785-856-0782
branden@smithlegalllc.com

Kevin M. Spellacy, *pro hac vice*
James Wooley, *pro hac vice*
Erin E. Hanson, *pro hac vice*
323 W. Lakeside Ave., Suite 200
Cleveland, OH 44113

- 16 -

Tele: 216-344-9220
Fax: 216-664-6999
kspellacy@spellacylaw.com
jwooley@spellacylaw.com
ehanson@mghslaw.com
Attorneys for Lawrence McManamon

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July, 2025, the above and foregoing was filed via

the court's CM/ECF system, which sent notice to all counsel of record.

*/s/ Kathleen Fisher Enyeart*
An Attorney for Defendant