UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     *Plaintiff*,

v.                                                                                    Case No. 2:24-cr-20070-DDC


NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),
CULLEN JONES (07),

     *Defendants*.

**Defendants' Joint Opposition to the Government's
Motion to Permit Lauren K. Stojak to Offer Opinion Testimony
and Motion to Exclude**

# Table of Contents

Summary of the Argument ........................................................................... 1

Argument ..................................................................................................... 2

I.    The proposed testimony violates Federal Rule of Evidence 702. ........... 4

    A.    Stojak's proposed testimony addresses improper topics. .............. 4

        1.    Stojak's *mens rea* opinions are improper. ............................ 4

        2.    Stojak's arithmetic opinions are improper. ........................ 5

    B.    Stojak lacks the requisite qualifications. ..................................... 6

    C.    Stojak failed to use sufficiently relevant and reliable methods .................... 7

        1.    False union comparators ............................................... 8

        2.    Disparate union profiles. ............................................. 8

        3.    False union-size analysis. ............................................ 9

        4.    Lack of benefit analysis ............................................. 10

        5.    Lack of data standardization. ....................................... 10

        6.    Cumulative error. ..................................................... 12

    D.    Exclusion is required. ............................................................ 12

II.    The proposed testimony violates Federal Rule of Evidence 403. ........... 13

Conclusion ................................................................................................. 15

Certificate of Service ................................................................................ 19

Defendants file this joint response to the government's Document 175 motion to permit Lauren K. Stojak to offer opinion testimony. The government's motion to admit this testimony should be denied with an order of exclusion.

## Summary of the Argument

The government seeks to present as Rule 702 "expert" evidence the testimony of Department of Labor investigator Lauren Stojak, who would opine about LM-2 reports, comparisons of union travel expenditures, and embezzlement "indicators." Doc. 175. The motion should be denied because (i) the government fails to carry its indispensable Rule 702 burdens and, alternatively, (ii) Rule 403 calls for exclusion of the proposed testimony.

Under Rule 702, the government has not carried its admissibility burden because Ms. Stojak's opinions are unhelpful and invade the jury's exclusive province. Where she opines on intent, authorization, and union benefit, she addresses ultimate issues that Rule 704(b) and Tenth Circuit precedent reserve to the factfinder. Where she merely compares numbers and reads LM-2 entries, she performs the same non-specialized tasks the jury can perform once the records are admitted. In neither mode does she offer the kind of expert assistance Rule 702 contemplates.

Ms. Stojak also lacks the requisite qualifications in any recognized field to support these opinions. Her background in compliance auditing does not supply expertise in criminology, forensic accounting, or financial-crime pattern recognition, and the government has not shown how her experience reliably leads to these conclusions or that any accepted discipline infers embezzlement from cross-union LM-2 comparisons.

Ms. Stojak has also used insufficient methods on an incomplete record. Her analysis depends on inapt comparators, disparate union profiles, size-driven per-member metrics, nonstandardized and manually "corrected" LM-2 data, and a complete absence of any benefit analysis—an array of flaws that compounds rather than cures uncertainty. She never explains why these unions are comparable, why her chosen denominators make sense, how her manual recoding was performed, or what principles guided her interpretation of inconsistent reporting practices. The result is a series of unsupported methodological choices that create a wide analytical gap between her premises and the accusation of embezzlement, a gap Rule 702 does not permit the government to bridge with the expert label alone.

Even if the government could satisfy Rule 702, the Court should still exclude the proposed opinions under Rule 403. Presenting a government investigator as an "expert" on embezzlement indicators would give her subjective inferences an unwarranted aura of official authority, blur her fact-witness and expert roles, invite mini-trials on collateral union-comparison issues, and needlessly duplicate evidence the government can present through documents, lay witnesses, and Rule 1006 summaries. Any marginal probative value is substantially outweighed by the dangers of unfair prejudice, confusion, and juror misdirection.

## Argument

The government's indictment charges Defendants with various counts related to the alleged misuse of union funds, including embezzlement for certain international travel. Doc. 1 at 27. At issue now is the government's Document 175 motion to permit the

admission of Rule 702 "expert" opinions by Lauren K. Stojak, a Department of Labor investigator who did a "survey comparing the expenditures for international travel and other reimbursed expenses reported in the Boilermakers Union LM-2 reports by Defendants Newton Jones and William Creeden with those filed by other international unions." Doc. 175 at 4. The motion seeks to have the following opinions admitted as Rule 702 expert opinions:

- Ms. Stojak would testify that "excessive reimbursed expenses are a frequent indicator of embezzlement—particularly where all four individuals are officials in the same union subject to the same leadership." Doc. 175 at 3.

- Ms. Stojak would testify that "the Boilermakers Union under Defendants Newton Jones and William Creeden spent more than twice as much international travel as the next highest union and nearly eighteen (18) times as much per member as the next highest union." Doc. 175 at 4.

- Ms. Stojak would testify that "the Boilermakers Union systematically underreported funds spent on international travel." Doc. 175 at 4.

- Ms. Stojak would testify that "the amount of international travel reported by Defendants Newton Jones and William Creeden indicates disproportionate expenditures over several years on international travel, and represents a prominent indicator of embezzlement of those funds." Doc. 175 at 5.

Defendants jointly oppose the government's motion to permit any of this testimony and now move to exclude it. The government's motion to admit should be denied and this

filing's motion to exclude should be granted with an order deeming Ms. Stojak's proffered Rule 702 testimony inadmissible.

## I.    The proposed testimony violates Federal Rule of Evidence 702.

The government moves to admit Ms. Stojak's designated views as "expert" opinion under Federal Rule of Evidence 702. Doc. 175. This requires the government to establish by a preponderance of the evidence all of Rule 702's prerequisites, including (1) that the testimony is sufficiently helpful, (2) that the witness is sufficiently qualified, and (3) that the witness used sufficient methods. *See generally* Fed. R. Evid. 702; *Daubert v. Merrell Dow*, 509 U.S. 579 (1993); *General Electric v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999). The government has satisfied none of these.

### A.    Stojak's proposed testimony addresses improper topics.

The government has not carried its Rule 702 admissibility burden because Ms. Stojak's opinions are not the proper subject of expert testimony. Her proffered opinions are both too much and too little for Rule 702's helpfulness requirement: they overreach by venturing into ultimate issues of authorization, necessity, and criminal state of mind, and they underperform by offering little more than arithmetic and document reading that jurors can perform for themselves. Where as here jurors can assess the evidence unaided, the offered Rule 702 testimony is wholly unhelpful and therefore inadmissible.

#### 1.    Stojak's *mens rea* opinions are improper.

Ms. Stojak's bottom-line opinions are not admissible because they cross the line from explaining evidence to telling the jury what mental state to find. Rule 704 expressly bars experts from stating opinions about a defendant's mental state, Fed. R. Evid. 704(b),

and the Tenth Circuit likewise prohibits expert opinions that resolve ultimate legal issues in the government's favor, *see Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988); *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007). By characterizing Defendants' travel as a "prominent indicator of embezzlement" that "lacked necessity and union benefit," Ms. Stojak does not merely describe data; she offers an opinion that, if credited, effectively resolves for the jury the contested § 501(c) elements of unauthorized use and lack of union benefit, and thus usurps the jury's role on those ultimate issues. That is precisely what Rule 704(b) forbids. *See In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2022 WL 226130, at *11 (D. Kan. Jan. 26, 2022).

Ms. Stojak's framework also misaligns with the elements of § 501(c). The statute asks whether the Defendants willfully, with fraudulent intent, and without authorization, embezzled, stole, abstracted, or converted IBB funds to their own use or to the use of another; it does not ask whether a union's spending is "typical" against a cross-union benchmark. Yet Ms. Stojak proposes to grade Defendants' conduct on a single "indicator" scale that ranks unions by relative travel spending and then treats the Boilermakers' position on that scale as proof of embezzlement. That framing risks inviting the jury to substitute her benchmark for the statutory test: if "high on the indicator scale" equals "embezzlement," the jury is no longer applying § 501(c) but Ms. Stojak's own metric.

### 2. Stojak's arithmetic opinions are improper.

Apart from her bottom line opinions, Ms. Stojak's intermediary analysis is also an improper subject of expert testimony because it too is unhelpful. Rule 702 permits expert

testimony only when it will help the jury understand evidence or determine a fact in issue. Where jurors can evaluate the same documents and perform the same arithmetic without assistance, the testimony is not helpful and therefore not admissible. *See United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 n.1 (10th Cir. 2006).

Here, Ms. Stojak's role is not to apply specialized statistical techniques or explain unfamiliar accounting rules; it is to read LM-2 entries, total and divide figures, and then argue that certain ratios show embezzlement. Those are tasks that do not require expertise and can, if necessary, be handled through Rule 1006 summaries tied to admitted records. Allowing her to present the same arithmetic in the posture of "expert analysis" would improperly cloak ordinary advocacy with the imprimatur of Rule 702.

### B.    Stojak lacks the requisite qualifications.

The government has not shown that Ms. Stojak is qualified to offer the particular opinions it seeks to elicit. Rule 702 does not ask whether a witness has experience in the abstract; it asks whether she is qualified "by knowledge, skill, experience, training, or education" to render the opinions actually offered. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). On this record, Ms. Stojak's CAP and I-CAP work shows experience with LM-2 compliance and reporting practices. But the government does not identify any aspect of that work that involved developing or applying a methodology for treating cross-union travel patterns as "prominent indicators of embezzlement," or for converting those patterns into conclusions about a particular officer's intent or the "necessity" and "benefit" of specific expenditures. Merely reciting her auditing

background and treating her conclusions as self-validating is precisely the *ipse dixit* the Rule forbids.

The problem is not that Ms. Stojak lacks a particular academic credential; it is that the government identifies no professional discipline, standard, or body of practice in which auditors infer embezzlement from the kind of cross-union LM-2 "indicator" analysis she proposes to use here. In non-scientific fields, *Daubert* and *Kumho Tire* still require that the expert's approach resemble what practitioners would do when faced with a similar problem outside litigation. Here, there is no showing that DOL auditors, in the regular course of their work, rank unions by per-member travel spending, assume all other reporting is accurate, and then infer embezzlement based on relative position alone. Absent any such showing, the government has not met its burden to demonstrate that her method reflects "reliable principles and methods" as Rule 702 requires.

Ms. Stojak's analysis does not reflect the intellectual rigor required of professional work outside litigation. She has training in regulatory compliance auditing—not criminology, forensic accounting, or financial-crime pattern analysis. Her "survey," created only after referral for grand-jury investigation, is not tied in the record to any articulated, generally accepted framework for inferring criminal intent from spending patterns, and the government points to no standards, guidance, or external validation showing that this particular 'indicator' approach has been subjected to any form of professional scrutiny or testing. *See* Doc. 175-1 at 3-4. The Court would have to accept her conclusions on faith, which Rule 702 does not permit.

**C.    Stojak failed to use sufficiently relevant and reliable methods.**

The government has not carried its admissibility burden because Ms. Stojak used insufficiently relevant and reliable methods. Besides helpfulness and qualifications, Rule 702 requires the Court to determine whether the expert's "reasoning or methodology properly can be applied to the facts in issue." *Rodriguez-Felix*, 450 F.3d at 1123. "Under *Daubert*, any step that renders the expert's analysis unreliable . . . renders the expert's testimony inadmissible." *Nacchio*, 555 F.3d at 1241. Here as well, the government as proponent "bears the burden of showing that its proffered expert's testimony is admissible." *Id.* But Ms. Stojak's proposed testimony is rife with flaws that render it irrelevant and unreliable.

### 1.    False union comparators.

Ms. Stojak's testimony is unreliable because it rests on a comparison set she never ties to the questions the jury must decide. She does not select unions based on similar size, industry, international footprint, or governance structure; instead, she aggregates multiple "top ten" lists and treats the resulting mix as a de facto norm. *See* Doc. 175-1 at 5–6. Defendants are then labeled "atypical" by reference to that norm, without any analysis of whether those unions face comparable demands for international travel or have comparable reporting practices.

### 2.    Disparate union profiles.

Ms. Stojak's analysis ignores undisputed differences among the unions she chose. The Boilermakers' international work—including their ownership and operation of a bank—creates travel obligations that many of her comparators simply do not have. Without controlling for such differences, cross-union averages say nothing about whether the

Boilermakers' travel was excessive for their mission; they only show that unions with very different roles spend less. [1] That kind of incommensurable comparison is not a reliable basis for attributing criminal intent.

### 3. False union-size analysis.

Ms. Stojak's proposed testimony is irrelevant and unreliable because it fails to properly account for relative union sizes. Her work purports to compare Defendants to "the ten largest unions by membership, [the] ten largest construction trade unions by membership, and the ten largest metal trade unions by membership." Doc. 175-1 at 5–6. But in 2024, the IBB was the forty-ninth largest union in the U.S. with 44,699 members. Id. at 7. It does not fall within the top-ten unions in any of the comparative categories. See id. at 7–9. Yet Ms. Stojak treats the IBB as if it were comparable to unions with nearly 28 times its membership. This is improper.

Ms. Stojak attempts to normalize spending by dividing aggregate travel costs by membership, but she never explains why that denominator is appropriate for the type of

---

[1] For example, manufacturing operates on a global scale, and IBB members suffer when companies offshore jobs to avoid workplace hour and condition protections . As such, Defendants' international travel was focused on building relationships with cross-border union federations and their constituents to prevent multinational corporations from using the global threat to shift manufacturing jobs away from IBB's membership base or diminish their wages and working conditions. This stands in contrast to unions such as AFSCME—whom Ms. Stojak compares to Defendants—whose activities are not threatened by offshoring and who, therefore, does not need to develop nearly the same degree of alliance with foreign constituents, which necessarily requires overseas travel. International travel disbursements, therefore, cannot be treated as an apples-to-apples comparison among the unions Ms. Stojak analyzed. There is significant nuance—and Ms. Stojak's failure to account for this makes her proposed testimony not only irrelevant, but, as discussed in more detail below, unreliable.

expenses at issue. Much of the relevant travel appears to be undertaken by a fixed leadership group whose size does not scale with membership. For such fixed-cost travel, per-member ratios will mechanically make smaller unions look "abnormal" even when their officers take the same trips at the same prices as officers of larger unions. By adopting a per-member metric without analyzing which costs are fixed and which are variable, and without testing alternative denominators (such as the number of officers, number of international projects, or revenue), Ms. Stojak builds distortion into her model and then treats that distortion as evidence of embezzlement. *See* Doc. 175-1 at 5–9. This approach reflects selection bias, not "sufficient facts or data" under Rule 702(b).

### 4.    Lack of benefit analysis.

To the extent the government seeks to elicit Ms. Stojak's conclusion that Defendants' travel "shows a lack of necessity and union benefit," Doc. 175-1 at 9, that opinion rests on an analysis she never performed. She does not review the stated purposes of particular trips, the union functions attended, the bargaining or organizing objectives pursued, or any other information bearing on whether the travel furthered member interests. Her report instead infers "lack of benefit" from the sheer volume of travel relative to her comparator set. Rule 702 does not permit the government to  present a "no benefit" label from an expert who never evaluated benefit in the first place.

### 5.    Lack of data standardization.

Ms. Stojak's proposed testimony is irrelevant and unreliable because it fails to reflect any reasonable data standardization. LM-2 reports are self-reported and allow unions broad discretion in how they categorize expenses. Apparent differences in

"international travel" may therefore reflect nothing more than differences in bookkeeping. A union that appears to spend less on travel may simply record those costs under a different category. Ms. Stojak concedes this variability, noting that travel should appear in certain schedules "if correctly reported," and simultaneously asserting—without support—that Defendants underreported their own travel. Doc. 175-1 at 6–7. Her own caveats highlight that the dataset she relies on is unstable. Ms. Stojak recognizes these inconsistencies and then attempts to cure them through "manual" review of the LM-2s to decide which entries count as international travel. Doc. 175-1 at 6. Yet she never discloses the rules she applied in recoding those entries, whether anyone tested her classifications, or whether a second reviewer reached similar results. Without articulated criteria or any check on her judgments, her manual recoding is not the kind of transparent, documented process that can be replicated or scrutinized; it is an opaque, one-off exercise.

That combination—self-reported data, recoded according to undisclosed rules, and then used as the foundation for a criminal "indicator" scale—does not satisfy Rule 702's requirement of "sufficient facts or data" analyzed by "reliable principles and methods." It asks the Court to accept both the inputs and the adjustments on trust alone.

Finally, the government's proffer is too thin to allow a meaningful reliability finding even if the Court were inclined to try. The motion and attached report do not supply the full list of unions included, the raw LM-2 data used, the criteria for inclusion or exclusion of entries, or any documentation of the "manual" categorizations she made. Without that underlying record, the Court cannot test her claimed comparisons or evaluate whether any other expert could replicate her results. Rule 702 does not require the Court to take an

expert's word on faith; it requires the proponent to furnish enough information to permit an independent reliability assessment. The government has not done so here.

### 6.    Cumulative error.

In closing, the flaws in Ms. Stojak's methodology compound each other and render her conclusions wholly unreliable. Her analysis turns on a series of subjective choices—what unions to include, what LM-2 entries to treat as travel, and which metrics to emphasize—yet she provides no principled explanation for any of those decisions. Without that foundation, her "reasoning or methodology [is not] properly applied to the facts in issue." *Rodriguez-Felix*, 450 F.3d at 1123. The result is a chain of assumptions rather than a coherent method, which Rule 702 does not permit. *See Nacchio*, 555 F.3d at 1241.

Indeed, her central inference is a non-sequitur. She compares unions with different sizes, missions, and international responsibilities, treats them as equivalents, and then declares that the Boilermakers' higher spending indicates embezzlement. That conclusion rests on two unsupported premises: that the comparators' travel was legitimate, and that the Boilermakers' was not. Yet she supplies no evidence about the legitimacy of travel for any union in her dataset. Her conclusion, therefore, collapses under its own weight—she has no basis to compare legitimacy across unions and no method to bridge the gap between her dataset and the accusation of embezzlement.

### D.    Exclusion is required.

It is no answer for the government to say that this litany of faults goes to weight, not admissibility. The 2023 amendment to Rule 702 underscores that the Court's gatekeeping role is not optional. The Rule now makes explicit that expert opinion may be

admitted only if the proponent shows it is more likely than not that the opinion is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those methods. This language codifies what *Daubert, Joiner,* and *Kumho Tire* already demanded and rejects any presumption of admissibility. In this posture, where the record exposes multiple unresolved gaps in methodology and foundation, the government has simply not carried that threshold burden.

## II.  The proposed testimony violates Federal Rule of Evidence 403.

Rule 403 requires exclusion when the danger of unfair prejudice, confusion, or misleading the jury substantially outweighs probative value. Even if the government could clear Rule 702—which it cannot—Ms. Stojak's testimony presents precisely that danger.

The core problem is structural. The government seeks to present the same agent who helped investigate this case as an "expert" who tells the jury how to interpret the spending patterns at issue. That dual posture cloaks her subjective inferences with an aura of official authority. It invites jurors to treat her conclusions as sanctioned determinations rather than one party's interpretation of financial records the jury can evaluate for itself.  The invitation to treat her inferences as official conclusions rather than one litigant's view of the evidence is especially strong where, as here, the government can present the underlying LM-2 data and any necessary summaries without resort to expert branding.

That risk manifests in several concrete ways. First, labeling a government investigator as an expert on "embezzlement indicators" creates unfair prejudice by suggesting that her conclusions carry official weight, not merely evidentiary support. Second, her dual role as fact witness and expert would confuse jurors about when she is

recounting observations and when she is offering opinion, encouraging them to credit her inferences because of her position rather than the evidence. Third, branding basic arithmetic and document comparisons as "expert analysis" would mislead jurors by implying methodological rigor that does not exist.

The testimony would also derail the trial. Admission would invite mini-trials over union governance, comparator selection, reporting practices, and data normalization—collateral disputes that add complexity without advancing the jury's task.

Rule 403's balance is decisive because the government does not need this testimony. It can introduce the LM-2 filings themselves, present lay testimony explaining how the forms work, and use Rule 1006 summaries of admitted records. Because the government can present its financial proof without an "embezzlement-indicator" expert, any marginal probative value is minimal. The risks of prejudice, confusion, and juror misdirection overwhelmingly outweigh it.

Analogous Tenth Circuit precedent confirms that exclusion is required. *See United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008); *United States v. Adams*, 271 F.3d 1236, 1246 (10th Cir. 2001). Just as Rule 403 bars "impressively qualified experts" from telling juries how to assess witness credibility, it bars the government from presenting its investigator as an expert who effectively tells the jury what the financial evidence proves. Ms. Stojak's proposed testimony would replace the jury's independent evaluation of admitted records with an authoritative government gloss on guilt. Rule 403 does not permit that substitution, and it requires exclusion here.

For just as Rule 403 compels the exclusion of "the testimony of impressively qualified experts on the credibility of other witnesses," *id.*, so too does Rule 403 compel the exclusion of Ms. Stojak's effort to vouch for the government's narrative, supplanting the jury's independent assessment of this critical evidence with her own.

## III.   Issues of "summary" testimony's propriety are premature.

The government styles part of its filing a "notice" of an intent to offer Ms. Stojak as a summary witness. Doc. 175 at 1. But the government seeks no relief on that point, and summary evidence is permissible only after the underlying records have been admitted. *See United States v. Stiger*, 413 F.3d 1185, 1198 (10th Cir. 2005). At this stage, because no one knows what that underlying proof will be, no advance ruling on summary testimony is appropriate. *See id.*

## Conclusion

The government's motion to permit Lauren K. Stojak to offer opinion testimony under Federal Rule of Evidence 702 should be denied, and the Defendants' motion to exclude her testimony should be granted. The issue of whether to allow any "summary" testimony is not ripe and should be reserved for trial.

Respectfully submitted,

SPENCER FANE LLP

/s/ *Patrick A. M<sup>c</sup>Inerney*

Patrick A. M<sup>c</sup>Inerney # 22561
Daniel M. Nelson KS Fed # 79203
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
Tel: 816-474-8100
Fax: 816-474-3216
pmcinerney@spencerfane.com
dnelson@spencerfane.com
Attorneys for Newton Jones

/s/ *Kurt Kerns*

Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tele: 316-265-5511
kurtpkerns@aol.com

Federico Andino Reynal, *pro hac vice*
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tele: 713-228-5900
areynal@frlaw.us

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tele: (713) 364-6640

Attorneys for William Creeden

/s/ *Mark Molner*
Mark D. Molner # 24493
EVANS & MULLINIX, P.A.
7225 Renner Road, Suite 200
Shawnee, KS 66217
Tele: 913-962-8700
Fax: 913-962-8701
mmolner@emlawkc.com

John T. Davis, *pro hac vice*
KESSLERWILLIAMS LLC
1401 S. Brentwood Blvd., Suite 950
St. Louis, MO 63144
Tele: 314-455-5555
Fax: 314-727-2869
john.davis@kesslerwilliams.com
Attorneys for Kateryna Jones

/s/ *J.R. Hobbs*
James R. Hobbs KS Fed # 70169
Marilyn Keller # 15444
WYRSCH HOBBS & MIRAKIAN, P.C.
One Kansas City Place
1200 Main St., Suite 2110
Kansas City, Missouri 64105
Tele: 816-221-0080
Fax: 816-221-3280
jrhobbs@whmlaw.net
mbkeller@whmlaw.net
Attorneys for Warren Fairley

/s/ *Branden Smith*
Branden Smith # 22761
SMITH LEGAL, L.L.C.
719 Massachusetts Street, Suite 126
P.O. Box 1034
Lawrence, Kansas 66044
Tele: 785-856-0780
Fax: 785-856-0782
branden@smithlegalllc.com

Kevin M. Spellacy, *pro hac vice*
James Wooley, *pro hac vice*
Erin E. Hanson, *pro hac vice*
323 W. Lakeside Ave., Suite 200
Cleveland, OH 44113
Tele: 216-344-9220
Fax: 216-664-6999
kspellacy@spellacylaw.com
jwooley@spellacylaw.com
ehanson@mghslaw.com
Attorneys for Lawrence McManamon

/s/ *Kathleen Fisher Enyeart*
Jackson Hobbs # 28191
Kathleen Fisher Enyeart # 25203
Brody Sabor KS Fed # 79098
LATHROP GPM
2345 Grand Blvd., Suite 2200
Kansas City, Missouri 64108
Tele: 816-292-2000
Fax: 816-292-2001
jackson.hobbs@lathropgpm.com
kathleen.fisherenyeart@lathropgpm.com
brody.sabor@lathropgpm.com
Attorneys for Cullen Jones

**Certificate of Service**

A true and correct copy of the foregoing document was served via the Court's CM/ECF

system to all registered counsel of record on the day of its filing.

/s/ *Patrick A. M$^{c}$Inerney*
Patrick A. M$^{c}$Inerney